IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DAMON LONG, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-12-683 |
| KATHY ROY *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

*I. Procedural History*

Damon Long *pro se* filed this case against Kathy Roy and "UCB Collections,"[1] claiming violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the "Maryland Consumer Collection Practices Act," and the "Maryland Deceptive and Unfair Trade Practices Act" as well as intentional infliction of emotional distress ("IIED").[2] (Compl., ECF No. 1.)  Long demanded declaratory judgment, preliminary and permanent injunctive relief, compensatory damages, statutory damages, and punitive damages.  Defendants filed a motion to dismiss or, alternatively, for summary judgment.  (ECF No. 6.)  Long responded separately to the motion to dismiss and the motion for summary judgment.  (ECF Nos. 8, 9.)  The Court has considered these filings as well as Defendants' reply (ECF No. 11) and concluded no hearing is necessary, Local Rule 105.6 (D. Md. 2011).  The motion will be granted.

---

[1] The correct name of the corporate defendant is United Collections Bureau, Inc., referred to as "UCB" in this memorandum opinion.  The Clerk will be directed to correct the case file in this respect.

[2] The Court presumes that Long's reference to "Maryland Consumer Collection Practices Act" is intended to refer to the Maryland Consumer Debt Collection Act ("MCDCA"), codified at Md. Code Ann., Com. Law § 14-201 *et seq.* (LexisNexis 2005), and that his reference to the "Maryland Deceptive and Unfair Trade Practices Act" is intended to refer to the portion of the Maryland Consumer Protection Act ("MCPA") dealing with unfair or deceptive trade practices, codified at Md. Code Ann., Com. Law § 13-301 *et seq.* (LexisNexis 2005).

## II. *Nature of the Dispute*

Long alleged in his complaint that Defendants reported a collection item, dated August 22, 2011, on his credit report. (Compl. ¶¶ 9, 11, 12.) He also alleged he noticed the item after he got a free copy of his credit report on February 11, 2012,[3] and faxed on February 13, 2012, to UCB a request for validation of the debt. (*Id.* ¶ 13.) Long further alleged he received a response from Roy on February 24, 2012, "showing a statement, attempting to collect the alleged debt and no validation." (*Id.* ¶ 14.) He faxed, presumably to Defendants, a letter of intent to sue on or about February 27, 2012, and said he received no response. (*Id.*)

In Count One, Long alleged that Defendants violated the FDCPA by falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(a), (10), and also violated § 1692e(8) by communicating information known to be false. (*Id.* ¶¶ 17-19.) In Count Two, he alleged Defendants violated the FCRA because they "did not notify the plaintiff at any time that the dispute was considered frivolous or irrelevant, or that plaintiff had failed to provide sufficient information to investigate the disputed information" (*id.* ¶ 23); because they "failed to review all relevant information provided by the consumer reporting agencies, pursuant to 15 U.S.C. § 1681I(a)(2), and as required by 15 U.S.C. § 1681s-2(b)(1)(B)" (*id.* ¶ 24); because they "failed to adequately conduct an investigation with respect to the disputed information, as required by 15 U.S.C. § 1681s-2(b)(1) after the Plaintiff's notice of dispute was received at the offices of the Collection Agency" (*id.* ¶ 25); because they "failed to report the results of the investigation findings to the consumer reporting agencies that the information provided by such person was incomplete or inaccurate," as required by 15 U.S.C. § 1681s-2(b)(1)(C), (D) (*id.* ¶¶ 26, 27); and because they, "in response to the notices of

---

[3] Plaintiff alleged he pulled his credit report on February 11, *2011*, but it seems clear that he intended to have alleged the date when he pulled his credit report as February 12, *2012*. The latter date is used by the Court in recounting the allegations of Long's complaint.

reinvestigation from the Credit Reporting Agencies, verified that the disputed information was accurate and complete on different occasions, even though they were in possession of information which showed that the tradelines were inaccurate, and even though the tradelines did not contain the notice of dispute, as required by 15 U.S.C. § 1681s-2(a)(3)" (¶ 28). In Count Five (there is no Count Three or Count Four in the complaint), Long alleged Defendants "intended to and did inflict severe emotional distress upon Plaintiff by engaging in actions that intended to harass, belittle, confuse, mislead and threaten the Plaintiff, the purpose of which was to intimidate and coerce the Plaintiff into paying a debt which was not legitimately owed, and conspired to systematically deny the Plaintiff his right to dispute the legitimacy and validity of a claimed debt" (*id.* ¶ 30).

In their motion, Defendants argue Long has no admissible evidence to support his allegations of violation of the FDCPA and they argue his allegations are insufficient to state a claim. (Defs.' Mot. Supp. Mem. 7, ECF No. 6.) They also argue they satisfied all obligations under the FCRA. (*Id.* 10-11.) Additionally, Defendants argue that a private litigant is not entitled to injunctive or declaratory relief under either the FDCPA or the FCRA. (*Id.* 12.) Finally, they contend Long failed to state a claim for relief with regard to the tort of intentional infliction of emotional distress ("IIED") or with regard to the Maryland statutes. (*Id.* 4-5, 13.)

## III. Applicable Legal Standards

### A. Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. An inference of a

mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 1950. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

### B. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

### IV. Analysis

Preliminarily, the Court notes that Long made no allegations supporting his invocation of the Maryland statutes. Thus, treating Defendants' motion as one to dismiss for failure to state a

4

claim, it will be granted as to any claim by Long under the MCDCA or the MCPA because of the absence of supporting factual allegations. Additionally, Long's allegations as to IIED fall short of a sufficient claim for relief because they are merely conclusional in nature and do not provide specific factual allegations from which the Court may conclude that Defendants subjected Long to emotional distress. Consequently, the motion to dismiss will be granted as to Count Five. Construing liberally Long's *pro se* complaint, the Court deems his allegations as to violations of the FDCPA and the FCRA as minimally sufficient to state a claim, although barely so.

Treating Defendants' motion as one for summary judgment, it will be granted as to Counts One and Two, which comprise the remainder of the case. Long's allegations in Count One claiming violations of the FDCPA are amply refuted by the admissible evidence attached to Defendants' motion. The business records of UCB show compliance by Defendants with the FDCPA's requirements pertaining to collections agencies. Specifically, the evidence shows numerous attempts to contact Long via telephone. (Mot. Ex. 1A.) The evidence also shows a letter from UCB to Long, dated August 26, 2011, naming the creditor as LifeBridge Health, the creditor's account number, the date of service on April 12, 2010, and the amount owed as $845.46. (*Id.* Ex. 1B.) The notice was sent to the same address as Long has used throughout the litigation in this Court, and it clearly states that the account was placed with UCB for collection; that the letter was an attempt to collect a debt by UCB, a debt collector; that, unless Long were to notify UCB within 30 days after receiving the letter that he disputed the validity of the debt or any portion thereof, UCB would assume the debt was valid; and that UCB would obtain verification of the debt and mail him a copy of the verification. On October 15, 2011, UCB notified the three major credit bureaus, TransUnion, Equifax, and Experian, of the debt and coded it to indicate it was seriously past due and assigned to UCB for collection. (*Id.* Ex. 1, ¶ 7; Ex. 1A.) A similar letter to the one dated August 26, 2011, was sent to Long on October 25,

2011. (*Id.* Ex. 1C.) The first response by Long was a letter received by UCB on February 13, 2012, requesting validation of the debt and disputing it. (*Id.* Ex. 1D.) On February 20, 2012, the patient accounts department at Sinai Hospital of Baltimore faxed to UCB a statement of the LifeBridge account (*id.* Ex. 1E); the information matched the account information provided in the two letters of August 26 and October 25, 2011. The creditor's information was forwarded to Long via mail dated February 22, 2012. (*Id.* Ex. 1F.) Long sent another letter to UCB dated February 27, 2012, in which he gave UCB notice of his intent to file a lawsuit against it, claiming UCB had not provided it with "proper validation." (*Id.* Ex. 1G.) On March 8, 2012, UCB requested the debt be removed from Long's credit report. (*Id.* Ex. 1, ¶ 15; Ex. 1A; Ex. 1H.) Long was so notified in a letter dated April 2, 2012 (*id.* Ex. 1H), following his filing of the instant lawsuit on March 2, 2012.

Long has failed to support his opposition to Defendants' motion for summary judgment with any admissible evidence and has failed to show that a genuine dispute of material fact exists. Thus, as to Count One claiming violation of the FDCPA, Defendants will be granted summary judgment.

As for Count Two, the evidence shows no obligations ever arose under the FCRA with regard to this debt of Long to LifeBridge Health. The assistant general counsel at UCB provided an affidavit attesting to her familiarity with the events relating to Long; in it, she stated UCB had never received notice from any credit bureau or consumer reporting agency that Long had disputed information in his credit report furnished by UCB, and it never received notice of any reinvestigation from such agency. (*Id.* Ex. 1, ¶ 16, 17.) Long has offered no evidence to counter Defendants' evidence. Because UCB never received notice of either dispute or reinvestigation from any credit bureau, the requirement under the FCRA to respond to such notice was never triggered. *See* 15 U.S.C. § 1681s-2(b)(1). In addition, the undisputed evidence shows UCB

validated the debt. Consequently, it did not violate its duty to report accurate information regarding the debt to the credit bureaus, pursuant to 15 U.S.C. § 1681s-2(a). Defendants have successfully demonstrated no genuine dispute of material fact exists as to Long's claimed FCRA violations; it is, therefore, entitled to judgment as a matter of law on Count Two.

## *V. Conclusion*

For the reasons stated, Defendants' motion will be treated as one to dismiss as to Count Five and as to any claims by Plaintiff under Maryland statutes. Defendants' motion will be treated as a motion for summary judgment on Counts One and Two and will be granted. A separate order will be entered.

DATED this 25th day of July, 2012.

BY THE COURT:

/s/
James K. Bredar
United States District Judge